**12 CV 7788**

**JUDGE ENGELMAYER**
**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

AIDAN MCNAMARA,

           Plaintiff,

    v.

THESTREET, INC. and THE DEAL, L.L.C.,

           Defendants.

Case No.:

*[Filing stamp: OCT 18 2012 U.S.D.C. S.D.N.Y. CASHIERS]*

---

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Aidan McNamara ("Plaintiff" or "Mr. McNamara"), by and through his attorneys, The Ottinger Firm, P.C., as and for his Complaint in this action against Defendants TheStreet, Inc. and The Deal, L.L.C. (collectively, "Defendants" or the "Company"), hereby alleges as follows:

### NATURE OF THE CLAIMS

1. This is an action brought by Plaintiff Aidan McNamara, a former employee of Defendants, to redress Defendants' unlawful failure to pay overtime compensation to Plaintiff in violation of the federal Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), as well as state and local wage and hour laws, in addition to Defendants' breach of their employment contract with Plaintiff by denying him payment of the deferred salary and severance owed to him pursuant to his employment contract in violation of the New York Labor Law §§ 190, *et seq.*, as amended ("NYLL").

## PARTIES

2.     Plaintiff Aidan McNamara is a resident of New Jersey. Mr. McNamara was employed by Defendants in their New York office from July 21, 1999 until September 12, 2012. At all relevant times, Plaintiff met the definition of an "employee" under all applicable statutes.

3.     Defendant The Deal, L.L.C. is a digital media company incorporated in Delaware and with headquarters in New York. Upon information and belief, The Deal, L.L.C. operates and sells a licensed digital transaction information service, "The Deal Pipeline," and formerly also published a print finance and business magazine called "The Deal" ("The Deal Magazine") until The Deal, L.L.C.'s acquisition by Defendant TheStreet, Inc. in September 2012, at which time the magazine ceased publication. At all relevant times, The Deal, L.L.C. met the definition of "employer" under all applicable statutes.

4.     Defendant TheStreet, Inc. is a digital financial media company incorporated in Delaware and doing business in New York. Upon information and belief, TheStreet, Inc. acquired The Deal, L.L.C. as a wholly owned subsidiary on or around September 11, 2012. At all relevant times, TheStreet, Inc. met the definition of "employer" under all applicable statutes.

5.     At all relevant times, Defendants The Deal, L.L.C. and TheStreet, Inc. have operated as a single, integrated enterprise, or single employer, or as joint employers. Upon information and belief, Defendants also share common ownership, common premises, common directors and/or officers, and common financial control, are operationally interrelated and interdependent upon one another, and share common management and

control over labor relations and personnel policies and practices, including the hiring and firing of Plaintiff and other employees.

## JURISDICTION AND VENUE

6. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1337. In addition, the Court has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. §§ 201 *et seq*. The Court also has supplemental jurisdiction over Plaintiff's related claims arising under state law pursuant to 28 U.S.C. § 1367(a).

7. The Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

8. Venue is proper in the United States District Court, Southern District of New York pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to this action, including the wage and hour violations, failure to pay earned wages, and breach of contract alleged herein, occurred in this District.

## FACTUAL ALLEGATIONS

9. Mr. McNamara was employed by Defendants from July 21, 1999 (at a time when The Daily Deal newspaper, a precursor to The Deal magazine, was under preparation for launch by American Lawyer Media Inc.), until September 12, 2012 as an advertising sales representative, formally known as an "Industry Director" and/or "Associate Publisher," in the Company's New York office.

10. Throughout his thirteen-year tenure with the Company, Mr. McNamara performed his duties to an exemplary standard and received consistent praise for his achievements.

11. Mr. McNamara's duties specifically involved selling advertising space in Defendants' The Deal Magazine, and other publications, to external clients exclusively by way of email and telephone from his cubicle workspace in Defendants' New York office.

12. As an advertising sales representative, Mr. McNamara did not possess any authority or discretion to adjust the pricing of the advertising products he sold, and was instead instructed to follow the fixed pricing structures as detailed on the Company's pre-printed rate cards, or to obtain advance authorization from management for price quotes off the rate cards.

13. Furthermore, Mr. McNamara did not supervise, manage and/or otherwise assign or delegate tasks to any other employees of Defendants, nor were his duties related to Defendants' general business operations.

14. In fact, Mr. McNamara's job title as "Industry Director" and/or "Associate Publisher" was an inflation of his actual role, and it was widely understood that Mr. McNamara held this title purely to assist in gaining direct and expedited access to clients of Defendants when contacting them by email or telephone in order to make and process sales.

15. Due to the heavy workload and volume of clients and accounts to which Mr. McNamara was assigned, he regularly reported to work early and stayed late in order to complete the tasks and finalize the deals to the standard expected of him as dictated by Defendants.

16. As well as reporting to work early and staying late, Mr. McNamara routinely worked through the sixty minutes allotted to him for lunch in order to be able to meet the deadlines and complete the tasks assigned to him.

4

17. To the best of his recollection, Mr. McNamara worked an average of approximately fifty hours per workweek throughout his employment with Defendants.

18. But, Defendants improperly classified Mr. McNamara as "exempt" under the FLSA and NYLL, and he was not compensated for the additional approximately ten hours over forty hours per workweek that he worked over the course of his employment with Defendants, despite his role as an advertising salesperson clearly falling outside the scope of any exemption to overtime compensation under the FLSA or NYLL.

19. Defendants' conduct, as set forth in this Complaint, was willful and in bad faith, and has caused significant damage to Plaintiff.

20. In addition to Defendants' clear violations of the FLSA and NYLL by failing to compensate Mr. McNamara for all hours worked over forty hours per workweek, Defendants have also breached their employment agreement with Mr. McNamara by failing to pay Mr. McNamara the "deferred" salary balance owed to him, in addition to the contractual severance to which he is entitled, under the clear and unambiguous terms of his employment agreement with Defendants.

21. Specifically, on July 6, 1999, Mr. McNamara and Defendants, then known as American Lawyer Media, Inc., entered into a Letter Agreement (the "Employment Agreement"), wherein the terms and conditions of Mr. McNamara's employment, including details of the structure of his compensation, were clearly laid out.

22. The Employment Agreement provided that, over the course of his employment with the Company, Mr. McNamara's salary would be "subject to review, *but not reduction*, not less frequently than annually." (emphasis added).

23. Mr. McNamara, having relied upon this guarantee that his salary would not be reduced over the course of his employment as a clear incentive to begin employment with Defendants, accepted Defendants' offer of employment and began working for the Company on July 21, 1999.

24. This proscription against salary reductions was further emphasized by a subsequent letter agreement between Mr. McNamara and Defendants, dated December 4, 2000 (the "2000 Agreement"), which aside from modifying the structure of commission payments to be paid to Mr. McNamara, explicitly stated that the parties' other respective obligations and the terms of the Employment Agreement "shall remain in full force and effect."

25. Consistent with the terms of both the Employment Agreement and the 2000 Agreement, Mr. McNamara's salary was reviewed on an annual basis through the year 2008. On each occasion that it was reviewed, Mr. McNamara's salary was increased as a reflection of his dedication to the Company and his exemplary performance in his role.

26. Mr. McNamara's annual salary was increased to $160,680.00 in 2008.

27. However, on December 15, 2008, Mr. McNamara was approached by Robert Clark, the then-Chief Operating Officer of the Company, who informed Mr. McNamara that, due to financial constraints, the Company would be required to reduce his 2009 salary payment by ten percent.

28. During this conversation, Mr. Clark assured Mr. McNamara that, consistent with the terms of the Employment Agreement and the 2000 Agreement, the 10% unpaid balance was not a salary reduction, but was instead merely a temporary deferral of the total salary owed to Mr. McNamara for 2009.

6

29. Although disappointed to be informed that the Company had not performed as well as in previous years and, as such, he would have to "take the hit" while the Company reorganized its financial operations, Mr. McNamara was reassured by Mr. Clark's repeated representations that this arrangement was temporary and that the unpaid balance would be paid.

30. Upon Mr. Clark's separation from the Company in 2009, Mr. McNamara promptly arranged a meeting with Helene Tomich, the then-Vice President of Corporate Affairs and Director of Human Resources, in order to discuss the deferred salary arrangement between Mr. McNamara and the Company.

31. Specifically, Mr. McNamara wanted to ensure the Company was aware of this arrangement, and to inquire as to the Company's position with regard to repayment of his still-accruing annual salary "deferrals."

32. During this meeting, Ms. Tomich assured Plaintiff that both she and Mr. Kevin Worth, the Company's Chief Executive Officer, were fully aware of the arrangement and that the Company fully intended to honor its obligation to repay Mr. McNamara the full balance of the accruing salary "deferrals."

33. Mr. McNamara repeatedly reconfirmed this arrangement and the Company's intentions to honor its obligations to him under the Employment Agreement and the 2000 Agreement through regular communications with Ms. Tomich from 2009 to the most recent occasion on April 30, 2012. On each occasion, Ms. Tomich freely acknowledged and reaffirmed the Company's intentions and obligation to repay the full balance of Mr. McNamara's earned salary that had been deferred on an annual basis since 2009.

34. Defendants terminated Mr. McNamara's employment with the Company without cause on September 12, 2012, shortly after Defendant TheStreet, Inc. acquired Defendant The Deal L.LC.

35. Per the terms of the Employment Agreement and the 2000 Agreement, in the event of Mr. McNamara's termination without cause, Defendants were to "pay [Mr. McNamara] severance equal to three months' salary, and [Mr. McNamara] will continue to be provided with all benefits during that period."

36. But Defendants' willfully failed to pay Mr. McNamara the earned deferred salary owed to him per the clear terms of his Employment Agreement, which were reaffirmed by the 2000 Agreement, with the Company, and also willfully failed to pay Mr. McNamara the severance payment to which he was contractually entitled.

37. Defendants' failures to make the deferred salary and severance payments provided for in the Employment Agreement and the 2000 Agreement constitute clear breaches of the contract between Mr. McNamara and Defendants.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Unlawful Failure to Pay Overtime Compensation under the FLSA)

38. Plaintiff repeats and realleges each and every allegation in the preceding paragraphs, as if fully set forth herein.

39. At all relevant times, Defendants have been "employers" engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of the FLSA, 20 U.S.C. § 203. At all relevant times, Defendants have employed and continue to employ employees. At all relevant times, upon information and belief, Defendants have had gross operating revenues in excess of $500,000.

40. The FLSA requires each covered employer, such as Defendants, to compensate all non-exempt employees at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty hours per workweek.

41. During his employment with Defendants, within the applicable statute of limitations, Plaintiff worked in excess of forty hours per workweek without overtime compensation. Despite the hours worked by Plaintiff, Defendants willfully, in bad faith, and in knowing violation of the FLSA, failed and refused to pay him overtime compensation and misclassified him as "exempt" from the overtime provisions of the FLSA.

42. By failing to accurately record, report, and/or preserve records of hours worked by Plaintiff, Defendants have failed to make, keep, and preserve records with respect to its employees sufficient to determine their wages, hours, and other conditions and practices of employment, in violation of the FLSA, 29 U.S.C. §§ 201, *et seq.*

43. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C. §§ 216(b) and 255(a), entitling Plaintiff to an award of liquidated damages and such other legal and equitable relief as the Court deems just and proper.

### AS AND FOR A SECOND CAUSE OF ACTION
### (New York Labor Law – Overtime Compensation Violation)

44. Plaintiff repeats and realleges each and every allegation in the preceding paragraphs, as if fully set forth herein.

45. At all relevant times, Plaintiff was an employee and Defendants have been employers within the meaning of the NYLL.

46. The overtime wage provisions of Article 19 of the NYLL and its supporting regulations apply to Defendants.

9

47. Defendants have failed to pay Plaintiff the overtime wages to which he is entitled under the NYLL.

48. By Defendants' failure to pay Plaintiff premium overtime wages for hours worked in excess of forty hours per workweek, they have willfully violated the NYLL, Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations, including, but not limited to the regulations in 12 N.Y.C.R.R. Part 142.

49. Due to Defendants' violations of the NYLL, Plaintiff is entitled to recover from Defendants his unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre- and post-judgment interest.

### AS AND FOR A THIRD CAUSE OF ACTION
### (Breach of Contract under New York law)

50. Plaintiff repeats and realleges each and every allegation in the preceding paragraphs, as if fully set forth herein.

51. Plaintiff and Defendants are parties to an enforceable written Employment Agreement, which required that, *inter alia*, Plaintiff's salary would be reviewed, but not reduced, no less frequently than annually over the course of Plaintiff's employment with Defendants, and, additionally, that in the event of his termination without cause, Plaintiff would be entitled to a severance payment equal to three months' salary and would continue to be provided with all benefits during that period.

52. As set forth above, Defendants breached the Employment Agreement by, among other things, (i) reducing Plaintiff's salary by ten percent in 2009 in an asserted salary "deferral" arrangement; (ii) failing to repay Plaintiff the full balance of the accruing salary "deferrals"; and (iii) failing to pay Plaintiff the severance owed to him under the Employment Agreement after terminating Plaintiff's employment without cause.

53. As a direct and proximate result of Defendants' breach of contract, Plaintiff has suffered and continues to suffer substantial monetary and/or economic damages, including, but not limited to, loss of past and future income, and compensation and other benefits, for which he is entitled to an award of monetary damages and other relief.

## AS AND FOR A FOURTH CAUSE OF ACTION
**(Breach of the Implied Covenant of Good Faith and Fair Dealing under New York law)**

54. Plaintiff repeats and realleges each and every allegation in the preceding paragraphs, as if fully set forth herein.

55. Plaintiff and Defendants agreed to an enforceable contract that contained an implied covenant of good faith and fair dealing.

56. By Defendants' wrongful treatment of Plaintiff, as outlined above, Defendants willfully breached their implied in law obligation to treat Plaintiff fairly and in good faith under the Employment Agreement.

57. As a direct and proximate result of Defendants' breach of the covenant of good faith and fair dealing, Plaintiff has suffered, and continues to suffer, harm for which he is entitled to an award of monetary damages and other relief.

## AS AND FOR A FIFTH CAUSE OF ACTION
**(Unlawful withholding of wages under New York Labor Law)**

58. Plaintiff repeats and realleges each and every allegation in the preceding paragraphs, as if fully set forth herein.

59. At all relevant times, Plaintiff was an "employee" within the meaning of the NYLL. Similarly, at all relevant times, Defendants were each an "employer" within the meaning of the NYLL.

60. Under the Employment Agreement entered into by the parties, the Company was required to pay Plaintiff, as compensation for his employment with the Company, a salary that would be immune from reduction when reviewed by the Company on a no less frequently than annual basis.

61. Plaintiff was later informed that ten percent of his annual salary would be withheld and "deferred," in light of Defendants' financial constraints that year.

62. Under the Employment Agreement, Defendants were also contractually bound to pay Plaintiff a severance payment equal to three months of his annual salary in the event he was terminated without cause from the Company.

63. These compensation awards constitute "wages" within the meaning of the NYLL §§ 190 *et seq.*

64. Defendants have refused to make the wage payments owed to Plaintiff and/or have unlawfully made deductions from such wages in violation of NYLL §§ 190 *et seq.*

65. As a result of the foregoing, Plaintiff has been denied wages required under the NYLL §§ 190 *et seq.*, and is entitled to an award of unpaid wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre- and post-judgment interest.

### AS AND FOR A SIXTH CAUSE OF ACTION
### (Fraud in the Inducement)

66. Plaintiff repeats and realleges each and every allegation in the preceding paragraphs, as if fully set forth herein.

67. As stated above, Defendants, through their duly authorized representatives and agents, made numerous false representations to Plaintiff in an attempt to induce Plaintiff to accept and continue his employment with Defendants.

68. Those representatives and agents of Defendants that made such false representations knew, or should have known, that these representations were false.

69. Defendants, through their duly authorized representatives and agents, made, authorized, acquiesced in and/or ratified these false representations with scienter.

70. To the extent that any of these false statements constituted a future promise or expectation, Defendants, through their duly authorized representatives and agents, made and authorized, acquiesced in and/or ratified such statements with a present intent not to fulfill them.

71. These false representations were made knowingly, or with a willful, wanton and reckless disregard for the truth, and were intended to deceive and defraud Plaintiff into remaining in employment with Defendants.

72. Plaintiff reasonably relied upon these representations regarding his deferred salary when he agreed to remain employed by Defendants from the initial "reduction" of his salary through his September 12, 2012 termination.

73. Plaintiff repeatedly communicated with Defendants concerning his deferred salary arrangement. Defendants, through their duly authorized representatives and agents, knew, or reasonably should have known, that they possessed superior knowledge and information concerning the payment of Plaintiff's deferred salary repayments and/or continued employment with the Company and that Plaintiff would rely upon these false representations in agreeing to remain employed by Defendants.

74. As a result of Plaintiff's reasonable reliance upon Defendants' false representations, he has suffered, and continues to suffer, substantial damages for which he is entitled to an award of monetary damages and other relief, including, but not limited to,

the attorneys' fees and costs that he has incurred to enforce his contractual entitlements, as well as an award of pre- and post-judgment interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment in his favor and against Defendants containing the following relief:

A. A judgment finding that Defendants violated the FLSA by failing to compensate Plaintiff for all hours worked over forty hours per workweek and/or by misclassifying his position as exempt from the overtime provisions of the FLSA;

B. A judgment finding that Defendants violated the NYLL by failing to compensate Plaintiff for all hours worked over forty hours per workweek and/or by misclassifying his position as exempt from the overtime provisions of the NYLL;

C. A judgment finding that Defendants breached their Employment Agreement with Plaintiff and failed to pay Plaintiff earned wages in violation of the NYLL and New York law by: (i) reducing his salary as part of a "deferred" salary payment arrangement; (ii) failing to make such repayments to Plaintiff for his earned salary owed to him; and (iii) failing to pay the severance payment to which Plaintiff was contractually entitled under his Employment Agreement;

D. A judgment finding that Defendants' violations as described above were willful, wanton and reckless;

E. An injunction and order permanently restraining Defendants from engaging in further unlawful activities in violation of the FLSA and NYLL;

F. An award to Plaintiff for the amount of unpaid wages owed, including interest thereon, and penalties, including liquidated damages, subject to proof at trial;

G. An award of damages in an amount to be determined at trial, plus pre- and post-judgment interest, to compensate Plaintiff for all other monetary and/or economic harm, including, but not limited to, the loss of past and future income, wages, compensation, and other benefits of employment;

H. An award of costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorneys' fees to the fullest extent permitted by law; and

I. Such other and further relief, in law or equity, as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.

Dated: October 18, 2012
New York, New York

Respectfully submitted,

**THE OTTINGER FIRM, P.C.**

By: _/s/ Ariel Y. Graff_
Ariel Y. Graff
Robert W. Ottinger

20 West 55th Street, 6th Floor
New York, New York 10019
Telephone: (212) 571-2000
Facsimile: (212) 571-0505
ari@ottingerlaw.com
robert@ottingerlaw.com

*Attorneys for Plaintiff Aidan McNamara*